IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAPLAN, INC., a Delaware corporation, | CASE NO.: |
| and | JUDGE: |
| DF INSTITUTE, LLC, d/b/a KAPLAN PROFESSIONAL EDUCATION and DEARBORN REAL ESTATE EDUCATION (f/k/a DEARBORN FINANCIAL PUBLISHING, INC.), an Illinois limited liability company, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| Plaintiffs | **[Jury Demand Endorsed Hereon]** |
| vs. | |
| REDLOO, INC. d/b/a CAMPUS MLS (f/k/a FLORIDA MLS, INC.), a Florida corporation, | |
| and | |
| MLS CAMPUS, INC., a Florida corporation, | |
| and | |
| MEROUANE REMMOUCHE, an individual, | |
| Defendants | |

Plaintiffs Kaplan, Inc. ("Kaplan") and DF Institute, LLC ("Dearborn") (Kaplan and Dearborn are collectively referred to herein as "Plaintiffs"), for their Complaint against Defendants Redloo, Inc., formerly known as Florida MLS, Inc. ("Florida MLS"), MLS Campus, Inc. ("MLS Campus") and Merouane Remmouche ("Remmouche") (Florida MLS, MLS Campus, and Remmouche are collectively referred to herein as "Defendants"), allege and state as follows:

## INTRODUCTION

1. Plaintiffs bring this action against Defendants to recover damages arising from and to enjoin infringements of copyrights by Defendants. Defendants unlawfully copied, distributed and/or sold Plaintiffs' copyrighted real estate course materials and blatantly plagiarized significant portions of those materials in course materials distributed and offered for sale by Defendants, all without authorization by or payment to Plaintiffs, and in violation of United States copyright law, 17 U.S.C. § 501, and other laws.

2. Dearborn brings this action against Florida MLS for breach of the Private-Label Web Site Agreement entered into between them, a copy of which is attached hereto as Exhibit 1 ("Agreement"). Florida MLS breached the Agreement by, among other things, offering Plaintiffs' online real estate course materials and content even after the Agreement had been terminated and misrepresenting such content as its own, all without authorization or payment to Plaintiffs.

3. Plaintiffs seek the entry of preliminary and permanent injunctive relief prohibiting Defendants' further infringements of copyrights and other unlawful acts and practices alleged herein; the imposition of a constructive trust upon all profits earned by Defendants that are attributable to their infringements, and assets purchased with those profits; the impoundment of all course materials owned by one or more of Plaintiffs in Defendants' possession, custody or control; and the award of actual or statutory damages, and heightened damages for willful copyright infringement, arising from Defendants' past and continuing infringements of copyrights, and other relief authorized by law.

**PARTIES**

4. Plaintiff Kaplan is a Delaware corporation with its principal place of business located in Fort Lauderdale, Florida.

5. Plaintiff Dearborn is an Illinois limited liability company with its principal place of business located in La Crosse, Wisconsin. Dearborn is an indirect wholly owned subsidiary of Kaplan. Dearborn is formerly known as Dearborn Financial Publishing, Inc. and is now doing business as Kaplan Professional Education and as Dearborn Real Estate Education. Dearborn is the successor-in-interest to all of the rights, title and interests under the Agreement.

6. Upon information and belief, Defendant Florida MLS is a Florida corporation with its principal place of business located in Orlando, Florida. Florida MLS changed its corporate name and, through that corporate name change, is now known as Redloo, Inc.

7. Upon information and belief, Defendant MLS Campus is a Florida corporation with its principal place of business located in Orlando, Florida.

8. Upon information and belief, Florida MLS and MLS Campus share the same business address, web sites and have the same or common officers and shareholders. By way of example, Remmouche is the registrant of the domain name www.mlscampus.com through which Defendants distributed, offered for sale and sold infringing real estate materials and content that was copied from copyrighted content owned by Plaintiffs.

9. Upon information and belief, Florida MLS and MLS Campus do not follow separate corporate formalities, and operate effectively as one and the same entity, one entity being the alter ego of the other.

10. Upon information and belief, Defendant Merouane Remmouche is an individual who resides in Orlando, Florida.

3

11. Upon information and belief, at all relevant times, Remmouche was and is an owner, operator, officer, shareholder, member and/or otherwise controls Florida MLS, and he (a) personally participated in and/or (b) had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and (c) derived direct financial benefit from that wrongful conduct.

12. Upon information and belief, at all relevant times, Remmouche was and is an owner, operator, officer, shareholder, member and/or otherwise controls MLS Campus, and he (a) personally participated in and/or (b) had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and (c) derived direct financial benefit from that wrongful conduct.

## JURISDICTION AND VENUE

13. This Court has original and exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action raises federal questions arising under the laws of the United States (copyright infringement) and pursuant to the Copyright Act, 17 U.S.C. § 101, et seq.

14. This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Illinois pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact. By way of example, the same conduct by Defendants, namely, Defendants' continued copying, distribution and sale of Plaintiffs' copyrighted real estate course materials after termination of the Agreement, forms the basis for both copyright infringement and breach of contract claims alleged in this Complaint.

15. Defendant Florida MLS is subject to personal jurisdiction in this Court because it consented to such jurisdiction pursuant to an express forum selection clause in the Agreement it entered into with Dearborn, which provided:

> 17. Applicable Law and Forum
>
> a  This Agreement shall be governed by the laws of the State of Illinois without regard to conflicts of laws. The parties hereto hereby agree on behalf of themselves and any person claiming by or through them that the sole jurisdiction and venue for any litigation arising from or relating to this Agreement shall be in an appropriate federal or state court located in Chicago, Illinois.

16. Defendants are further subject to personal jurisdiction in this Court because they purposefully aimed their activities at Illinois from which the claims asserted in this Complaint arise. By way of example, Florida MLS entered into the Agreement with an Illinois company by which it agreed its contractual relationship would be governed by Illinois law. Both before and after termination of the Agreement with Dearborn, Florida MLS and MLS Campus copied, distributed, offered for sale and sold Plaintiffs' copyrighted real estate course materials – to which it had access solely by virtue of that Agreement – and later plagiarized and copied substantial portions of those materials and represented them as their own. Upon information and belief, at all relevant times, Remmouche was and is an owner, operator, officer, shareholder, member and/or otherwise controls Florida MLS and MLS Campus, and he (a) personally participated in and/or (b) had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and (c) derived direct financial benefit from that wrongful conduct.

17. Venue is proper in this District by virtue of the express venue provision in the forum selection clause of the Agreement set forth above. Venue is also proper in this District pursuant to 28 U.S.C. § 1400(a), as Defendants may be found in this District. Upon information

and belief, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and/or (3), as a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this District and/or Defendants have a sufficient connection with this District to make venue proper in this District.

## FACTUAL BACKGROUND

18. Kaplan and its related entities together are among the world's largest education providers. For more than 75 years, Kaplan and its related entities have been providing education and training for, among other things, professional licensing and certification exams. Kaplan and its related entities created the test preparation business and were an early leader in online education. Today, Kaplan and its related entities together operate in over 30 countries and maintain relationships and partnerships with more than 1,000 school districts, colleges and universities, and over 2,600 corporations and businesses.

19. In the area of real estate education and training, Kaplan, through Dearborn and other affiliates, makes up one of the nation's largest real estate training and content solution provider, providing the highest quality real estate licensing and continuing education content and support materials available.

20. Among the real estate content and services offered by Dearborn is an exclusive online learning platform that makes it easy for any school to expand into real estate distance education. Schools can create a customized, branded site where students can register and take real estate courses online, from licensing and exam prep to continuing education.

21. Dearborn owns and maintains an internet web site that provides authorized users access to Dearborn-owned real estate education content ("Dearborn's Content").

22. Florida MLS owns and operates a Florida online real estate school that does business, or has done business, as Campus MLS and/or MLS Campus.

23. Florida MLS desired to offer Dearborn's Content to its students, and to allow its students to access Dearborn's Content through a web site privately branded to Florida MLS.

### The Private-Label Website Agreement

24. In January of 2010, Dearborn and Florida MLS entered into a Private-Label Website Agreement (Exhibit 1).

25. Pursuant to the Agreement, Dearborn agreed to and did design, develop and maintain on its servers a privately branded web site bearing logos of Florida MLS through which Florida MLS students could access Dearborn's Content subject to the terms and conditions of the Agreement (the "Branded Site").

26. Under and subject to the terms and conditions of the Agreement, Dearborn granted Florida MLS a limited, non-exclusive, non-transferable license (the "Limited License") to permit authorized students to access the Branded Site, including real estate educational courses offered by Florida MLS through the Branded Site.

27. The Agreement expressly limited the Limited License granted thereunder as follows:

> For avoidance of doubt, the scope of the foregoing license is limited to online use only. In no event may Provider or its students download the Content, Courses or any other content from the Dearborn Site, or otherwise copy, reproduce, resell, or use the Content, Courses or any other content from the Dearborn Site….

(Exhibit 1, Agreement, Section 2a).

28. The Agreement further provided that the exclusive means by which Florida MLS was authorized to provide its students with access to Dearborn's Content was by providing links to such Content via the Branded Site. (Exhibit 1, Agreement, Section 2b).

29. The Agreement further required that all Florida MLS students taking its online real estate courses shall do so through the Branded Site in accordance with Dearborn's policies and procedures set forth on the Branded Site. (Exhibit 1, Agreement, Section 3a).

30. Pursuant to the Agreement, Dearborn collected all fees paid by Florida MLS students for online real estate courses taken through the Branded Site. Dearborn then paid a rebate to Florida MLS for each course taken by an authorized student based upon an agreed rate schedule. (Exhibit 1, Agreement, Section 4a).

**Unlawful Conduct by Defendants**

31. At an unknown time in 2012, Florida MLS materially breached the Agreement by creating a link on the Branded Site that redirected prospective Florida MLS students to its own web site where Florida MLS was advertising and selling Dearborn's Content. In doing so, Florida MLS began collecting directly the entire fees paid by its student for its online real estate courses that, under the terms of the Agreement, were required to be taken exclusively through the Branded Site.

32. By 2013, Florida MLS had stopped selling Dearborn's Content through the Branded Site, and instead, was selling Dearborn's Content directly to its students through its own web site, falsely representing that Dearborn's Content was its own. Upon information and belief, this included copying and selling Dearborn's copyrighted "Florida Real Estate Principles, Practices & Law" content.

33. In or around August, 2014, Plaintiffs became aware of Defendants' unlawful conduct as described above.

34. In a letter to Defendants dated August 26, 2014, Plaintiffs notified Defendants of their breach of the Agreement and violation of Plaintiffs' intellectual property rights, and

demanded that Defendants cease and desist (the "Cease and Desist Letter"). A true and accurate copy of this Cease and Desist Letter is attached as Exhibit 2.

35. On September 16, 2014, Remmouche, individually and behalf of Defendants, signed the Cease and Desist Letter representing and warranting that (a) Defendants had sold 4,278 courses containing "content similar" to Dearborn's Content, and (b) Defendants had received $28,019 from selling courses that contained "content similar" to Dearborn's Content.

36. In signing the Cease and Desist Letter, Defendants further represented and warranted that (a) all of Dearborn's Content had been withdrawn from all websites and all other venues and Defendants had surrendered to Plaintiffs all of Dearborn's Content in their possession or control, and (b) Defendants agreed to never again advertise, manufacture, offer for sale, sell or otherwise distribute Dearborn's Content in any venue, including, but not limited to, Defendants' web sites.

37. Notwithstanding Defendants' representations and warranties made in signing the Cease and Desist Letter, Defendants subsequently distributed, offered for sale and sold on their web site at [www.mlscampus.com](www.mlscampus.com) a variety of online real estate courses that plagiarized and copied substantial portions of Dearborn's Content. Upon information and belief, Defendants' copyright infringement of Dearborn's Content is continuing and will continue unless enjoined by this Court.

38. By way of example, in their online materials entitled "Florida Real Estate 63 Hour Sales Associate Pre-License Get It All Package V2.1" (hereafter "Defendants' Sales Associate Pre-License Course"), Defendants plagiarized and copied verbatim or nearly verbatim a substantial portion of the text from Dearborn's copyrighted publication entitled "Florida Real Estate Principles, Practices & Law" (38th Edition) (hereafter "Dearborn's Real Estate PP&L

Course"). Attached as Exhibit 3 are true and accurate screen shots from Defendants' Sales Associate Pre-License Course showing content, highlighted in blue, which was plagiarized and copied verbatim or nearly verbatim from Dearborn's Florida Real Estate PP&L Course.

39. By way of further example, in their online materials entitled "Florida Real Estate 72 Hour Broker Pre-License Get It All Package V2.0" (hereafter "Defendants' Broker Pre-License Course"), Defendants plagiarized and copied verbatim or nearly verbatim a substantial portion of the text from Dearborn's copyrighted publication entitled "Florida Real Estate Broker's Guide" (4th Edition) (hereafter "Dearborn's Real Estate Broker's Guide"). Attached as Exhibit 4 are true and accurate screen shots from Defendants' Broker Pre-License Course showing content, highlighted in blue, which was plagiarized and copied verbatim or nearly verbatim from Dearborn's Real Estate Broker's Guide.

40. By way of further example, in their online materials entitled "Florida Real Estate Broker State Exam Prep V1.2" (hereafter "Defendants' Broker State Exam Prep"), Defendants plagiarized and copied verbatim or nearly verbatim a substantial portion of the sample exam questions and answers from Dearborn's copyrighted publication entitled "Florida Real Estate Exam Manual for Sales Associates and Brokers" (35th Edition) (hereafter "Dearborn's Exam Manual"). Attached as Exhibit 5 are true and accurate screen shots of 47 questions and answers from Defendants' Broker State Exam Prep. All 47 of these questions and answers, with the exception of questions 4, 8 and 31, were plagiarized and copied verbatim or nearly verbatim from Dearborn's Exam Manual, although the answers were sometimes re-ordered.

41. By way of further example, in their online materials entitled "Florida Real Estate Sales Associate State Exam Prep V2.0" (hereafter "Defendants' Sales Associate State Exam Prep"), Defendants plagiarized and copied verbatim or nearly verbatim a substantial portion of

10

the sample exam questions and answers from Dearborn's Exam Manual. Attached as Exhibit 6 are true and accurate screen shots of 47 questions and answers from Defendants' Sales Associate State Exam Prep. All 47 of these questions and answers, with the exception of questions 16, 29 and 35, were plagiarized and copied verbatim or nearly verbatim from Dearborn's Exam Manual, although the answers were sometimes re-ordered.

42. By way of further example, in their online materials entitled "Real Estate Math: What You Need To Know V2.0" (hereafter "Defendants' Math Course"), Defendants plagiarized and copied verbatim or nearly verbatim a substantial portion of the text from Dearborn's copyrighted publication entitled "Real Estate Math, Sixth Edition, What You Need To Know" (hereafter "Dearborn's Real Estate Math"). Attached as Exhibit 7 are true and accurate screen shots from Defendants' Math Course showing content, highlighted in blue, which was plagiarized and copied verbatim or nearly verbatim from Dearborn's Real Estate Math.

43. Kaplan owns the copyright to Dearborn's Real Estate PP&L Course, which copyright is registered with the United State Copyright Office. Attached as Exhibit 8 is a true and accurate copy of the Certificate of Registration for the work entitled "Florida Real Estate Principles, Practices & Law 38E," bearing the Registration Number TX 8-050-703.

44. Kaplan owns the copyright to Dearborn's Real Estate Broker's Guide, which is registered with the United State Copyright Office. Attached as Exhibit 9 is a true and accurate copy of the Certificate of Registration for the work entitled "FL RE Broker's Guide 4E," bearing the Registration Number TX 7-411-977.

45. Kaplan owns the copyright to Dearborn's Exam Manual, which is registered with the United State Copyright Office. Attached as Exhibit 10 is a true and accurate copy of the

11

Certificate of Registration for the work entitled "Florida Real Estate Exam Manual for Sales Associates and Brokers 35E," bearing the Registration Number TX 7-456-864.

46. Kaplan owns the copyright to Dearborn's Real Estate Math, which is registered with the United State Copyright Office. Attached as Exhibit 11 is a true and accurate copy of the Certificate of Registration for the work entitled "Real Estate Math : What You Need To Know : v1.0 (CD-ROM)," bearing the Registration Number TX 6-346-843, the content of which CD-ROM version is identical to Dearborn's Real Estate Math.

47. Upon information and belief, Defendants' online materials that were substantially copied from Dearborn's Content were offered for sale and/or sold and distributed to individuals who registered for Defendants' online courses and training. The sale and distribution of such content was without authorization by or payment to Plaintiffs.

48. Plaintiffs now bring this action to enjoin Defendants from further infringements of copyrights in Dearborn's Content owned by Plaintiffs, and to recover damages for past infringements by Defendants.

## COUNT I

### (Copyright Infringement, 17 U.S.C. § 501, *et seq.*)

### (All Defendants)

49. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in the foregoing paragraphs 1 through 48, inclusive.

50. Kaplan is the owner of each of the original works of authorship identified in paragraphs 43-46 above and Exhibits 8 through 11.

51. The copyrights in each of the original works of authorship identified in paragraphs 43-46 above and Exhibits 8 through 11 have been registered with the United States

Copyright Office. Certificates evidencing those registrations have been issued by the United States Copyright Office for each of the works. True and correct copies of Certificates of Registration Nos. TX 8-050-703, TX 7-411-977, TX 7-456-864 and TX 6-346-843 are attached as Exhibits 8 through 11.

52. By plagiarizing, copying, reproducing, distributing, displaying and making other infringing uses of the works owned by Plaintiffs, including the works identified in paragraphs 43-46 above and Exhibits 8 through 11, Defendants have infringed the copyrights in those works, in violation of 17 U.S.C. § 501. Defendants engaged in these acts and practices without authorization by or payment to Plaintiffs.

53. Defendants have willfully infringed copyrights, as evidenced, inter alia, by such acts and practices as copying text verbatim or nearly verbatim, including unique references, from the works, including the works identified in paragraphs 43-46 above and Exhibits 8 through 11, and from Dearborn's Content.

54. At a minimum, Defendants have acted with willful blindness to, or in reckless disregard of, the copyrights in the works owned by Plaintiffs, including the works identified in paragraphs 43-46 above and Exhibits 8 through 11.

55. As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages and an award of any profits attributable to Defendants' infringements of copyrights, pursuant to 17 U.S.C. § 504(b). In the alternative, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), for Defendants' infringements of copyrights.

56. Any award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendants' willful infringements of copyrights.

57. Plaintiffs are entitled to injunctive relief and an order impounding all infringing materials. Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the copyrights in the works of authorship owned by Plaintiffs are unique and valuable properties; (2) Defendants' infringements interfere with Plaintiffs' goodwill and customer relations, and harm Plaintiffs such that they could not be made whole by any monetary award; and (3) Defendants' wrongful conduct, including Defendants' infringements of copyrights, and the resulting damage to Plaintiffs, are continuing. Plaintiffs are entitled therefore to injunctive relief pursuant to 17 U.S.C. § 502, and an order impounding all infringing materials pursuant to 17 U.S.C. § 503.

58. Plaintiffs are is also entitled to recover their attorney's fees and costs pursuant to 17 U.S.C. § 505.

## COUNT II

### (Breach of Contract)

### (Defendant Florida MLS)

59. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in foregoing paragraphs 1 through 58, inclusive.

60. Dearborn and Florida MLS entered into the Agreement (Exhibit 1), which at all relevant times was a binding, valid and enforceable contract between them.

61. Dearborn performed all of its obligations and satisfied all of the terms and conditions of the Agreement.

62. By its unlawful and wrongful conduct as alleged in this Complaint, Florida MLS materially breached the terms and conditions of the Agreement, including by: (a) adding a link to the Branded Site that redirected prospective Florida MLS students to its own web site where

Florida MLS was unlawfully advertising and selling Dearborn's Content, (b) collecting directly the entire fees paid by its student for its online real estate courses that, under the terms of the Agreement, were required to be taken exclusively through the Branded Site with fees collected by Dearborn, (c) failing to pay Dearborn under the Agreement for courses taken by Florida MLS students using Dearborn's Content, and (d) ultimately no longer selling Dearborn's Content though the Branded Site, but instead, copying and selling Dearborn's Content directly to its students through its own web site, falsely representing that Dearborn's Content was its own.

63. As a direct and proximate result of Florida MLS's breach of the Agreement, Dearborn has suffered loss and damages, including loss of customers, revenue and profit, in an amount not presently ascertainable, but which will be determined at trial.

## COUNT III

## (Unjust Enrichment)

## (Defendant Florida MLS)

64. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in foregoing paragraphs 1 through 63, inclusive.

65. As an alternative remedy, if for some reason it is determined that no enforceable contractual relationship existed between Dearborn and Florida MLS, then Florida MLS, in its copying and use of Dearborn's Content without authorization from or payment to Dearborn, has received and retained a benefit that in equity and good conscience it may not retain without payment of due consideration to Dearborn.

66. As a direct and proximate result of Florida MLS's unjust enrichment, Dearborn has been injured and is entitled to restitution in the amount of such unjust enrichment, which amount cannot presently be ascertained, but which will be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

(1) That the Court enter a judgment against all Defendants finding that they have willfully infringed the copyrights in works of authorship owned by Plaintiffs, including the works identified in paragraphs 43-46 above and Exhibits 8 through 11, in violation of the Copyright Act, 17 U.S.C. § 501;

(2) That the Court enter an order, pursuant to 17 U.S.C. § 502(a), enjoining and restraining Defendants, and any persons or entities controlled directly or indirectly by them, from engaging in the following conduct:

  (a) reproducing, distributing, displaying or making any other infringing uses of the works identified in paragraphs 43-46 above and Exhibits 8 through 11 owned by Plaintiffs;

  (b) reproducing, distributing, displaying or making any other infringing uses of any other works owned by Plaintiffs or any of its affiliated entities; and

  (c) assisting, aiding or abetting any other person or entity in engaging or performing any of the activities referred to in subparagraphs (a) and (b) above;

(3) That the Court enter an order, pursuant to 17 U.S.C. § 503, impounding all infringing works and content, and any related items, including business records, that are in Defendants' possession, custody or control, and ordering the return, remedial destruction, or other appropriate disposition of all impounded items;

(4) That the Court enter an order, pursuant to 17 U.S.C. § 504(b), declaring that Defendants hold in trust, as constructive trustees for the benefit of Plaintiffs, all profits received by them that are attributable to Defendants' infringements of copyrights, including those identified in paragraphs 43-46 above and Exhibits 8 through 11, and requiring Defendants to provide Plaintiffs a full and complete accounting of all profits received by them;

(5) That the Court order Defendants, pursuant to 17 U.S.C. §§ 504(b) and (c)(1), to pay actual or statutory damages to Plaintiffs and, pursuant to 17 U.S.C. § 504(c)(2), enhanced damages for Defendants' willful infringements of copyrights;

(6) That the Court order Defendants, pursuant to 17 U.S.C. § 505, to pay full costs and reasonable attorney's fees;

(7) That the Court enter a judgment against Defendant Florida MLS finding that it has breached the Private Label Website Agreement and awarding Plaintiff Dearborn compensatory damages for such breach in an amount to be determined at trial;

(8) In the alternative, that the Court enter judgment against Florida MLS finding that it has been unjustly enriched by virtue of its wrongful conduct as alleged in this Complaint and awarding Plaintiff Dearborn compensatory damages in an amount to be determined at trial; and

(9) That the Court grant to Plaintiffs such other additional relief as is just and proper.

///

///

///

///

///

///

**JURY DEMAND**

Plaintiffs Kaplan, Inc. and DF Institute, LLC hereby demand a trial by jury.

DATED: August 29, 2016.

Robert E. Chudakoff (*pro hac vice* pending)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
Tel: (216) 583-7000
Fax: (216) 583-7001
rchudakoff@ulmer.com

/s/ *Thomas M. Williams*
Thomas M. Williams (#6238371)
Victoria J. Langton (#6303781)
ULMER & BERNE LLP
500 West Madison Street, Suite 3600
Chicago, Illinois 60661
Tel: (312) 658-6500
Fax: (312) 658-6501
twilliams@ulmer.com
vlangton@ulmer.com

*Attorneys for Plaintiffs*